UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                              CASE NO: 2:14-cr-23-FtM-38DNF

BRIAN RALPH HERRON

### ORDER[1]

This matter comes before the Court on consideration of the Magistrate Judge Douglas N. Frazier's Report and Recommendation ([Doc. #56](#)), filed on November 12, 2014, recommending Defendant Brian Ralph Herron's Motion to Suppress ([Doc. #22](#)) be denied. Defendant Herron filed an objection to the Report and Recommendation ([Doc. #57](#)) on November 26, 2014. This matter is now ripe for review.

Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. [28 U.S.C. § 636(b)(1)](#); [United States v. Powell, 628 F.3d 1254, 1256 (11th Cir. 2010)](#). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." [28 U.S.C. § 636(b)(1)(C)](#); see also [United States v. Farias-Gonzalez, 556 F.3d 1181, 1184 n. 1 (11th Cir. 2009)](#). The district judge reviews legal conclusions

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

*de novo*, even in the absence of an objection. Cooper-Houston v. So. Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994). A district court may not reject the credibility determination of a magistrate judge without personally rehearing disputed testimony from the witness. Powell, 628 F.3d at 1256-58.

## Discussion

On July 11, 2014, Herron filed a Motion to Suppress. The Government filed a response in opposition on July 25, 2014. (Doc. #27). After holding a hearing and reviewing the evidence, the Magistrate Judge recommended that Herron's motion be denied. Counsel for the Defendant takes issue with some of the Magistrate Judge's findings in the Report and Recommendation. Particularly, Counsel objects to issues as they relate to a Franks violation, a custodial interrogation, and the voluntariness of the Defendant's statement. The Court will address each of the objections below.

  a. *Franks Violation*

As the Magistrate Judge explained, a Franks violation occurs when evidence is seized under a search warrant that contains a materially false statement in the affidavit and the remaining information in the affidavit is insufficient to establish probable cause. United States v. Fussell, No. 5:08-cr-05-19-GRJ, 2008 WL 4534139, at *11 (M.D. Fla. Oct. 7, 2008). Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that there is a fair possibility that evidence of a crime will be found in a particular place. United States v. Hebble, No. 2:12-cr-5-FtM-29CM, 2014 WL 1333198, at *1 (M.D. Fla. Apr. 3, 2014) (quoting United States v. Lebowitz, 676 F.3d 1000, 1010-11 (11th Cir. 2012)). A defendant bears the burden of proving by a

preponderance of the evidence that the search warrant and accompanying affidavit violate Franks. Id.; see also Franks v. Delaware, 438 U.S. 154 (1978).

In this case, FBI Task Force Agent Patricia Enterline applied for a search warrant on August 8, 2013. (See Doc. #22-5). The affidavit mentioned Special Agent Joseph Cecchini found child pornography was accessed at IP address 75.67.203.96. (See Doc. #22-5, at 22-24). The affidavit associated this IP address with Herron's residence in Cape Coral, Florida.

At the hearing before the Magistrate Judge, Agent Cecchini testified that he listed Herron's IP address to be 75.67.203.96 by mistake in a "302" report. Agent Cecchini, however, later corrected this by filing a new "302" report with Herron's real IP address, 76.101.108.220. Agent Cecchini and Agent Enterline explained that the "302" reports are identical with the exception of the IP addresses and the undercover session number. Agent Enterline testified that she inadvertently relied on the wrong "302" report and thus the wrong IP address when applying for the search warrant. After she found the mistake, Agent Enterline contacted the Government to explain. Further, she explained her mistake to the grand jury.

Herron argues the warrant was solely predicated upon the allegations that child pornography was obtained through IP address 75.67.203.86. This IP address was confirmed by the subpoena to be assigned to Herron's residence. Yet, the Government's discovery shows this is not true. Herron argues, the statements in the search warrant affidavit were made in reckless disregard of the truth. After reviewing the arguments and evidence, however, the Magistrate Judge concluded the statements in the search warrant affidavit were not made in reckless disregard of the truth.

Herron objects to this finding. Herron asserts the failures in the search warrant affidavit cannot be attributed to mere negligence. This is because the failures were not limited to simply reading the wrong report. Instead, the affiant actually confirmed that the downloaded child pornography came from the 75.67.203.86 IP address. This is exacerbated by Agent Cechinni testimony that he never spoke to Agent Enterline. So there was in fact no confirmation as the affidavit stated.

Upon consideration, the Court disagrees with Herron. The record reflects Agent Cechinni inadvertently used the wrong IP address in his "302" report. As a result, Agent Enterline used the wrong IP address in the application for a search warrant. These mistakes were not purposeful or a reckless disregard of the truth. Thus a Franks violation did not occur. Moreover, even if the court assumed there was no IP address information referenced in the search warrant application, such an omission would not be dispositive to the overall probable cause determination here. See United States v. Vanbrackle, 397 Fed.Appx. 557, 561 (11th Cir. 2010) (citing United States v. Bach, 400 F.3d 622, 627-28 (11th Cir. 2005)). For example, among other things, the search warrant contained the correct residential address and even included a picture. See, e.g., United States v. Belitsky, 566 Fed.Appx. 777, 782-84 (11th Cir. 2014) (affirming district court's holding that the wrong description used in a search warrant did not amount to Franks violation).

  b. *Custodial Interrogation*

As the Magistrate Judge explained, a defendant who is in custody and under interrogation must be given his Miranda warnings in order for his statements to be later introduced into evidence. Miranda v. Arizona, 384 U.S. 436 (1966). A defendant, however, who voluntarily gives a statement to law enforcement in a non-custodial

4

situation does not need to be advised of his Miranda rights. A suspect is considered to be in custody when he has been formally arrested or his movement has been restrained to the degree associated with a formal arrest. California v. Beheler, 463 U.S. 1121, 1125 (1983). When reviewing whether a custodial arrest was made, Courts looks at the totality of the circumstances and at factors such as the location of the questioning, the duration of the statement made during the questioning, the presence of any physical restraints, and the release of the suspect at the end of questioning. Howes v. Fields, 132 S.Ct. 1181, 1189 (2012); United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006).

Herron argues he was in custody when the police questioned him at his residence. Herron specifically asserts the police questioned him in an accusatory and sarcastic manner and in a police dominated atmosphere. Herron also asserts he was not freely permitted to walk throughout his home during the interview. After reviewing the arguments and evidence, however, the Magistrate Judge concluded Herron was not in custody at the time he made his statements.

Herron objects to this finding. Herron asserts the Magistrate Judge discounts the significance of the number of police officers that were at Herron's residence because only two or three officers interviewed him. Moreover, Herron asserts he was accompanied by police when he re-entered his residence and was restricted to certain areas. Herron also asserts the Magistrate Judge gave undue weight to the fact that Herron was not arrested at the end of the interview.

Upon consideration, the Court agrees with the Magistrate Judge's reasoning. The officer's accusation that Herron was lying to them, the presence of numerous officers at the scene of the search warrant, and the fact that Herron was unable to walk freely

throughout his home while police executed the search warrant did not alter the voluntary interview so that it became a custodial interrogation. Brown, 441 F.3d at 1348-49 (finding even though officer accompanied defendant throughout home, since defendant was permitted to eat, smoke and the like, this weighed in favor of finding his interview was non-custodial); see generally United States v. Maldonado, 562 Fed.Appx. 859, 861 (11th Cir. 2014) (encounter with several U.S. postal inspectors did not make the interview a custodial interrogation). Herron was in a familiar environment. Herron was able to smoke and drink during his interview. Brown, 441 F.3d at 1348-49. In addition, the police started the interview by advising Herron he could voluntarily participate in the interview. Herron was told that he was free to leave and that he was not under arrest. Id. at 1347 (noting defendant's understanding that he was not under arrest and was free to leave weighed in favor of finding a defendant was not in custody) (citing United States v. Brave Heart, 397 F.3d 1035, 1039 (8th Cir. 2005)); see also United States v. Matcovich, 522 Fed.Appx. 850, 852 (11th Cir. 2013) (finding similar facts as here did not render defendant's interview as a custodial arrest). Under the totality of the circumstances, the Court finds Herron participated freely and voluntarily in the interview, and that the circumstances did not rise to the level of creating a custodial interrogation.

    c. *Voluntariness*

As the Magistrate Judge explained, whether a statement is voluntary is determined by looking at the totality of the circumstances. Hubbard v. Haley, 317 F.3d 1245, 1252 (11th Cir. 2003) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)). Courts look to see whether a defendant's statement is "essentially free and unconstrained choice." Hubbard, 317 F.3d at 1252-53 (citing United States v. Garcia, 890 F.2d 355, 360

6

(11th Cir. 1989)). To make this determination, courts consider factors such as a defendant's intelligence, the length of a detention, the nature of the interrogation, the use of any physical force, or the use of any promises of inducements by the police. Hubbard, 317 F.3d at 1253 (citing Bustamonte, 412 U.S. at 226; United States v. Gonzalez, 71 F.3d 819, 828 (11th Cir. 1996)); see also Shotwell Mfg. Co. v. United States, 371 U.S. 341, 347 (1963) (a confession must be free and voluntary . . . not obtained by any direct or indirect promises, however slight. (citing Bram v. United States, 168 U.S. 532, 542-43 (1987)).

The record reflects, on or about August 19, 2013, the police executed a search warrant at Herron's residence. During this execution, the occupants of the residence, including Herron, stepped outside of the residence while the house was cleared and evidence was taken. Herron chose not to leave and was questioned.

In his motion to suppress, Herron asserts his statements during the police questioning were not voluntary. After reviewing the arguments and evidence, however, the Magistrate Judge concluded Herron's statements were voluntary.

Herron objects to this finding. Herron argues his statements were involuntary. He asserts his statements were a result of law enforcement threats, both direct and indirect, to take responsibility for the illegal child pornography because otherwise his girlfriend, Broderick, would be found responsible. Herron asserts the police officers were sinister when they assumed Herron's denial of guilt equated to Broderick's guilt. Herron argues the Report and Recommendation minimizes the significance of this particular tactic and that statements such as, "so its either you or Deb," renders his confession involuntary.

Herron supports this argument by citing to a Sixth Circuit case entitled United States v. Finch, 998 F.2d 349 (6th Cir. 1993).

Herron also takes issue with the Magistrate Judge's findings of how Agent Tissot's statements, along the lines of, individuals who confess to the crimes are the individuals who receive leniency from the criminal justice system. Herron asserts the Magistrate Judge did not find this kind of statement to be "permissible" yet concluded that because Herron continued to deny that he had intentionally downloaded child pornography thereafter, that any promise of receiving leniency did not compel Herron's confession. Herron argues he only confessed after he was promised leniency from law enforcement.

The Court will now turn to Finch. In Finch, police raided Finch's residence under a search warrant for cocaine. Id. at 351. When the police entered the residence, Finch along with his girlfriend and mother were on the premises. Id. The police told Finch they might or would arrest his girlfriend and mother in light of cocaine in his residence. Id. at 356. Thereafter, Finch provided the police with the location of the cocaine. Id. at 355. The Sixth Circuit found this "was a real threat" because such threats to arrest members of a suspect's family may cause a confession to be involuntary. Id. (citing Rogers v. Richmond, 365 U.S. 534 (1961)). Moreover, since the police did not have probable cause to arrest the women, there was no legal basis to threaten to do so. Finch, 998 F.2d at 356 (because the police had no basis to conclude that either woman (1) had knowledge of the cocaine in the residence; (2) had knowledge Finch was involved in the distribution of the cocaine; (3) had knowledge the cocaine existed; (4) was in constructive possession of the cocaine; or (5) was an aider or abettor of the cocaine). As a result, the Sixth Circuit

found Finch's statements were involuntary and in violation of his right against self-incrimination. Id.

The Court finds the facts in this case are significantly different than the facts in the Finch case. For example, and perhaps most distinguishable, the police officers never threatened to arrest Herron's girlfriend without probable cause to do so. Instead, Herron's explained to police that the computer at issue was only accessed by himself and his girlfriend. Herron also denied that the child pornography was his. As a result, the police logically commented that if the child pornography was not Herron's, and only Herron and Broderick had access to the computer containing the child pornography, then the child pornography must be Broderick's. The police made this observation without explicitly threatening to arrest Broderick. The Court does not find this logical observation, under the circumstances, to be threatening or to be such a statement that would coerce a defendant to admit to a crime.

Moreover, this case is more like a district case within the Eleventh Circuit. In Richardson, Richardson asserted his statements were the result of unlawful coercion and thus inadmissible because the police threatened to arrest his girlfriend. United States v. Richardson, No. 12-60294-Cr., 2013 WL 2897037, at *3, 5 (S.D. Fla. June 12, 2013). The Court, however, found Richardson was not improperly coerced. Id. at *5. Since, Richardson was treated cordially, permitted to use the restroom when requested, and was never pressured into incriminating himself, the Court found his statement was not the result of coercion. Id.

Similarly here, there is no evidence that Herron was interrogated for an exhaustingly long time, no evidence that Herron was threatened with physical force, and

9

no evidence that Herron was deprived food, water, or sleep. The statements about Herron's girlfriend did not coerce Herron to confess. In fact, in the very beginning of Herron's conversation with police and before the "its either you or Deb" statements, Herron admitted based on their Internet use customs that if there were any crime committed using the Internet such crime would have been committed by him rather than Broderick. (See Gov. Exh. 8, at 6, 26).

The Court will now turn to the leniency argument. "A confession can never be received in evidence where the prisoner has been influenced by any threat or promise." Bram v. United States, 168 U.S. 532, 543 (1897) (quoting 3 Russ. Crimes (6th Ed.) 478). Thus, if a confession is compelled from a hope of a reward it is inadmissible. See Shotwell Mfg. Co. v. United States, 371 U.S. 341, 373 (1963). "[O]nce a promise of leniency is made a presumption arises that it continues to operate on the mind of the accused. But a showing of a variety circumstances can overcome that presumption." Leyra v. Denno, 347 U.S. 556, 588 (1954).

Here, Herron was not promised anything in exchange of a confession. Instead, a police officer generally stated,

> When we go to the AUSA, the attorney, with everything and I'm telling you, I'm not just bullshitting you, the first they're gonna listen is the energy and they're gonna know you're lying. And just listen, even you if you're not. And they're gonna, they're not gonna cut you any breaks because they're gonna say he didn't take responsibility. Now listen, the ones we do in the past, these interviews when the people come up front and forward, they're the ones that get breaks.

(Gov. Exh. 8, at 80). This general statement was not a promise of leniency. Moreover, after this police officer's statement, Herron continued to deny that he accessed the child pornography. That is, Herron never confessed to intentionally having child pornography

on his computer during his discussion with the police. Thus, as the Magistrate Judge concluded, the police officer's statement "was not sufficiently compelling or linked to Defendant's statements to demonstrate that they were not the product of Defendant's free will." (Doc. #56, at 24). Instead, the police officer's statement was limited and not casually related to a later confession. That is, the conversation between the police and Herron were not enough in and of themselves to overcome Herron's will later. See <u>Burch v. Sec., Dept. of Corr.</u>, No. 8:09-CV-745-T-27TGW, 2012 WL 365114, at *7 (M.D. Fla. Aug. 23, 2012), aff'd 535 Fed.Appx. 789, 791-92 (11th Cir. 2013). Herron also never fully confessed to the crimes for which he is accused. Herron's story remained the same throughout his voluntary interview.

In review of the arguments, record, and appropriate case law, the Court finds the Magistrate Judge made the correct decision and it full-heartedly agrees with the Magistrate Judge's findings. No improper coercion took place. No improper promises were made. Under the totality of the circumstances, Herron's statement was voluntary.

<u>Conclusion</u>

After an independent review of Defendant Herron's motion to suppress (Doc. #22), the Government's response (Doc. #27), the evidentiary hearing transcripts and exhibits (Doc. #50; Doc. #51; Doc. #46), the Magistrate Judge's Report and Recommendation (Doc. #56), and Defendant Herron's objections (Doc. #57), the Court fully agrees with the findings of facts and conclusions of law made by the Magistrate Judge. Therefore, the Court will adopt the Report and Recommendation, and will deny the motion to suppress.

Accordingly, it is now

**ORDERED:**

1. Magistrate Judge Douglas N. Frazier's Report and Recommendation (Doc. #56) is **ACCEPTED** and **ADOPTED**, and it is specifically incorporated into this Order.

2. Defendant Herron's Objections (Doc. #57) are **OVERRULED**.

3. Defendant Herron's Motion to Suppress (Doc. #22) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this 4th day of February, 2015.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record